UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUAN LUNA DOMINGUEZ and MARLON JOSE GRANADOS, individually and on behalf of all other persons similarly situated who were employed by GALAXY RECYCLING INC., JOSEPH SMENTKOWSKI, INC. d/b/a GALAXY CARTING and/or SMENTKOWSKI GARBAGE REMOVAL and/or any other entities affiliated with or controlled by GALAXY RECYCLING INC., JOSEPH SMENTKOWSKI, INC. d/b/a GALAXY CARTING and/or SMENTKOWSKI GARBAGE REMOVAL, <br><br> Plaintiffs, <br><br> -against- <br><br> GALAXY RECYCLING INC., JOSEPH SMENTKOWSKI, INC. d/b/a GALAXY CARTING and/or SMENTKOWSKI GARBAGE REMOVAL, and GARY GIORDANO, individually, <br><br> Defendants. | **Docket No.: 12-cv-7521 (MCA) (LDW)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF THE SETTLEMENT,
APPROVAL OF PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND
SERVICE AWARDS AND FOR FINAL CERTIFICATION OF THE FLSA
COLLECTIVE**

VIRGINIA & AMBINDER, LLP

s/Jack L. Newhouse, Esq.
Jack L. Newhouse, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Tel: (212) 943-9080
jnewhouse@vandallp.com

*Attorneys for Plaintiffs and the Putative Class*

**TABLE OF CONTENTS**

INTRODUCTION…………………………………….…..…………………….……1

PROCEDURAL BACKGROUND……………………………….……………………2

    **I.** The Litigation………………………………………..…........……...2

    **II.** Investigation and Discovery……………………………….……....2

    **III.** Settlement Negotiations……………………………….…….…....…3

SETTLEMENT PROCEDURE AFTER PRELIMINARY APPROVAL…………………....3

    **I.** Notice Distribution……………………….……………………...........3

    **II.** Authorized Claimants…………………………………………….......4

ARGUMENT……………………………………….……………………….............5

    **I.** The Proposed Settlement Is Entitled to an Initial Presumption of Fairness………5

    **II.** The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects……………………………………….......................6

        1. Litigation Through Trial Would be Complex, Costly, and Long (*Girsh* Factor 1)……………………………………………….........6

        2. The Reaction of the Class Has Been Positive (*Girsh* Factor 2)…………….7

        3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Girsh* Factor 3)…………………………….....................7

        4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Girsh* Factors 4 and 5)………………………………………………….............8

        5. Risks Involved in Maintaining the Class Through Trial (*Girsh* Factor 6)…………………….................................................................9

        6. Defendants' Ability to Withstand a Greater Judgment (*Girsh* Factor 7)…....9

        7. The Settlement Fund is Substantial, Even in Light of the Best Possible

Recovery and the Attendant Risks of Litigation (*Girsh* Factors 8 and 9)…..9

8. Additional Factors…………………….....................................10

**III.** Final Certification of the FLSA Collective…………………………………...11

APPLICATION FOR ATTORNEYS' FEES AND SERVICES AWARDS……………..….......13

I. Class Counsel Is Entitled To a Reasonable Fee of 37.5% of the Settlement

Fund……………………………………………………………………….........13

II. The Percentage Method Is the Preferred Method for Awarding Attorney's Fees in

Common Fund Cases in the Third Circuit…………………….........................14

1. Size of the Fund and Number of Persons Benefitted……...................................14

2. Presence or Absence of Substantial Objections………...................................15

3. Skill and Efficiency of Class Counsel………....................................................15

4. Hours Worked and Risk of Non-Payment…………………...............................16

5. Awards in Similar Cases………………….....................................................17

6. Lodestar Cross-Check…………………….....................................................17

7. Additional Expenses………………….......................................................18

III. The Requested Service Award is Reasonable and Should Be Approved……………18

CONCLUSION……………………………………………………………….............21

## TABLE OF AUTHORITIES

CASES                                                                              Page(s)

*Bredbenner v. Liberty Travel, Inc.*,
2011 US Dist LEXIS 38663 (D.N.J. 2011)…….……………….……...……………..…..*passim*

*Dorn v. Eddington Sec., Inc.*,
No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)…………………………………8

*Frank v. Eastman Kodak, Co.*,
228 F.R.D. 174, 187 (W.D.N.Y. 2005)……………………………………….……………19

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir.1975)…………………………...……………………………………*passim*

*Guippone v. BH S&B Holdings, LLC*,
2011 WL 5148650, at *7 (S.D.N.Y. 2011) …………………………………………………...19

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190, 195 n. 1 (3d Cir. 2000)………………………………………………………14

*In re Cendant Corp. Litig.*,
264 F.3d 201, 339 (3d Cir 2001)…...…………………………………………………...16, 18

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003)………………………………………………18

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)…….……………………………….……………………......10, 11

*In re Rite Aid Corp. Sec. Litig.*,
396 F3d 294, 300 (3d Cir. 2005)………………………………………………………………14

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)………...………………………………………………..............7

*Lenahan v. Sears, Roebuck & Co.*,
No. CIV. 02-0045, 2006 WL 2085282 (D.N.J. July 24, 2006)...……...…………………………10

*Lusardi v. Lechner (Lusardi II)*,
855 F.2d 1062 (3d Cir. 1988)………………………………………………...……….........12

*Lusardi v. Xerox Corp. (Lusardi I)*,
118 F.R.D. 351 (D.N.J. 1987)………………………………………………………………11

*McKenna v. Champion Intern. Corp.*,

747 F.2d 1211, 1213 (8th Cir. 1984)……………………………………………….……………12

*McMahon v. Olivier Cheng Catering & Events, LLC,*
2010 USC Dist LEXIS 18913 (SDNY 2010)……………………………………………………12

*Milliron v T-Mobile USA, Inc.*,
2009 US Dist LEXIS 101201 (D.N.J. 2009)………………………….……………………………..5

*Parker v. Jekyll & Hyde Entm't Holdings*, LLC,
2010 WL 532960, at 2 (S.D.N.Y. 2010)……………………………...……………………20

*Reyes v. Altamarea Grp., LLC,*
2011 WL 4599822 (S.D.N.Y. 2011)……………………………………………….……………20

*Rodriguez v. West Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009)……………………………………………………..…………19

*Sewell v. Bovis Lend Lease, Inc.,*
2012 WL 1320124 (S.D.N.Y. 2012)………………………………………………………..19

*Singleton v. First Student Mgmt. LLC,*
No. CIV.A. 13-1744 JEI, 2014 WL 3865853 (D.N.J. Aug. 6, 2014)...……..……………….......10

*Sperling v. Hoffman-La Roche, Inc.*,
862 F.2d 439, 444 (3d Cir. 1888)110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)……………….....11, 12

*Weber v. Gov't Employees Ins. Co.,*
262 F.R.D. 431 (D.N.J. 2009)..……………………………….......................................8, 10

*Yong Soon Oh v. AT&T Corp.*,
225 F.R.D. 142, 152 (D.N.J. 2004)……………………………………………………………16

*Velez v. Majik Cleaning Serv., Inc.,*
2007 WL 7232783 (S.D.N.Y 2007)……………………………………………………..…19

## STATUTES

Fed. R. Civ. P. 23…………………………………….......................................... *passim*

Fair Labor Standards Act 29 U.S.C. §§ 207................................................................. 2

Fair Labor Standards Act, 29 U.S.C. §§ 216(b) …………………….......................................2

New Jersey Statutes §§ 34:11-56a4…………………………………………………………..2

**OTHER AUTHORITIES**

*Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*,

10 Emp. Rts. & Emp. Pol'y J. 395 (2006)……………………………..………………..…………..19

## <u>INTRODUCTION</u>

Plaintiffs submit this memorandum of law in support of their unopposed motion for final approval of the proposed settlement as set forth in Settlement Agreement and Release (hereinafter the "Agreement"). Specifically, Plaintiffs seek an order to (1) approve the settlement as fair, reasonable, and adequate for both the NJLL Settlement Class ("Rule 23 Class Members")[1] and FLSA Collective Members (Rule 23 Class Members and FLSA Collective Members are collectively referred to as "Class Members"), (2) bind all Rule 23 Class Members who have not timely opted out to the Released Class Claims as set forth in the Agreement, (3) award Class Counsel attorneys' fees and costs in the amount equal to $450,000.00, (4) award service award to Named Plaintiff Juan Luna Dominguez in an amount equal to $10,000, and (5) dismiss the litigation (i) with prejudice as against Defendant Joseph Smentkowski, Inc. d/b/a Galaxy Carting and/or Smentkowski Garbage Removal, (ii) without prejudice against Defendant Galaxy Recycling, Inc., and (iii) without prejudice against Gary Giordano pending the full payment of the Final Settlement Amount.

On November 15, 2016, this Court took the first step in the settlement approval process by granting preliminary approval of the settlement as set forth in the Agreement, directing that notice be distributed to Rule 23 Class Members and FLSA Collective Members, and setting the date for the final fairness hearing. [See Docket No. 135]. Rule 23 Class Members and FLSA Collective Members have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement. For the reasons stated below, it is respectfully submitted that this Court should grant final approval.

---

[1] NJLL Settlement Class is defined in the settlement agreement as "all drivers, driver's helpers, waste collectors and loaders that were employed by Defendant JOSEPH SMENTKOWSKI, INC. d/b/a GALAXY CARTING from December 7, 2010 to December 31, 2015 and whose settlement is limited to claims under New Jersey Statutes §§ 34:11-56a4 *et seq.*" [*see* Settlement Agreement at Section 1.21, at Docket No. 131, Document 3].

## PROCEDURAL BACKGROUND

### I.        The Litigation

This is an action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 216(b), New Jersey Statutes §§ 34:11-56a4 *et seq.* to recover unpaid wages and overtime compensation allegedly owed to Named Plaintiff and all members of the putative class for residential waste collection work that they performed while employed by Defendants.

Defendants asserted sixteen (16) separate affirmative defenses, including the failure to state a claim upon which relief can be granted defense and stating that Plaintiffs were paid all wages due and owing.

On September 20, 2013, this Court granted conditional certification pursuant to 29 U.S.C. § 216(b). [Docket No. 23].

On December 10, 2015, this Court granted Plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. [Docket No. 107].

On November 15, 2016, this Court granted Plaintiffs' motion for preliminary approval of the proposed settlement and authorized distribution of Notice of Proposed Class Action Settlement ("Notice") to 614 Class Members [Docket No. 135]. To date, a total of 108 individuals are participating in this settlement by virtue of (i) filing a settlement claim form or (ii) filing a consent to join form with the Court during the conditional certification opt-in period. These 108 individuals are referred to as Authorized Claimants.

### II.        Investigation and Discovery

Before entering into the Agreement, Class Counsel conducted thorough investigations of Plaintiffs' claims. They conducted extensive legal research on the underlying merits, the probability of obtaining liquidated damages, the proper measure of damages, and Defendants'

2

affirmative defenses. Newhouse Decl. ¶¶ 4, 12.

The parties also engaged in significant discovery. Formal discovery included reviewing thousands of pages of documents, including, but not limited to payroll records and time records. In addition, Class Counsel engaged in numerous discussions and interviews with the Named Plaintiff, opt-in plaintiffs and Class Members. Newhouse Decl. ¶¶ 7, 12. Depositions of Plaintiffs Juan Luna Dominguez and Marlon Granados were taken. *Id.* Additional discovery was exchanged during settlement negotiations, including extensive payroll and time records for the Class Members. *Id.*

### III.     Settlement Negotiations

The parties devoted the better part of six months attempting to settle this action.  To this end, Defendants' produced over 14,000 pages of payroll and time records; Plaintiffs' Counsel conducted interviews with Class Members, Defendants produced data and other information for the Class Members in response to discovery demands, and counsel for the parties participated in multiple in-person and telephone settlement conferences, including multiple in-person and telephone settlement conferences before the Honorable Leda Dunn Wettre, the results of which culminated in this Agreement. *See* Newhouse Declaration ¶¶ 7-8, 12.

## SETTLEMENT PROCEDURE AFTER PRELIMINARY APPROVAL

### I.     Notice Distribution

Pursuant to this Court's November 15, 2016 Order preliminarily approving the settlement, the Court-approved Notice and the Claim Form and Release were distributed by first class mail on December 14, 2016 to over 614 FLSA Collective Members and Rule 23 Class Members both in English and Spanish.  Newhouse Decl. ¶ 9(a). As set forth in the Agreement, Class Members consist of all individuals employed by Defendants as drivers, driver's helpers, waste collectors and loaders from December 7, 2010 to December 31, 2015.

a.     A total of 166 notices distributed by mail were returned as undeliverable by the post office. Newhouse Decl. ¶ 9(b).  The claims administrator performed a skip trace on the returned notices, which only revealed better addresses for 49 Class Members. Newhouse Decl. ¶ 9(c). Notices were re-mailed to these addresses from January 9 to January 30, 2017. *Id.* 18 Notices were returned as undeliverable.  As such a total of 135 Notices remained undeliverable. *Id*.  The fact that such few addresses were found after a skip trace was performed by the claims administrator supports a finding that it will be very difficult, if not impossible, to track down class members that did not receive the notice.

## II.    <u>Authorized Claimants</u>

A total of 108 Class Members are Authorized Claimants.  The 108 Authorized Claimants in this matter amounts to approximately 17.6% of all Class Members. Newhouse Decl. ¶ 9(f).

Each Authorized Claimant is entitled to a Settlement Check for the Individual Settlement Amount in accordance with the formula stated in the Agreement.[2]  More specifically, the parties have agreed to settle this action for a total of $1,200,000.00.   *See* Settlement Agreement § 3.4(A)(1). The Agreement calls for the settlement fund to be distributed such that each Authorized Claimant shall receive 4.5% of their W-2 or 1099 reported gross earnings during December 7, 2010 through December 31, 2015 (the "Relevant Period"). *See* Settlement Agreement § 3.4 (A)(2). In addition to those payments, FLSA Collective Members shall receive liquidated damages in an amount equal to 100% of the wages they are entitled to for this period. *Id*. at § 3.4(A)(3).

Settlement payments to all 108 Authorized Claimants totals $312,475.04. Newhouse Decl. ¶ 10.

---

[2] In order to receive their check, Authorized Claimants are required to submit identification and a W-4 form with a valid social security number or tax identification number within one year of the Final Approval Order.  *See* Settlement Agreement at § 2.5(D).

4

## ARGUMENT

**I.      The Proposed Settlement Is Entitled to an Initial Presumption of Fairness**

Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e).  As explained by Judge Falk in *Bredbenner*:

> A class settlement is entitled to an "initial presumption of fairness" when "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors,* 55 F.3d at 785 (citing 2 Newberg on Class Actions § 11.41 at 11-88 (3d ed. 1992)); Manual for Complex Litigation (Third) § 30.42, at 238 (1997). This presumption may attach even where, as here, settlement negotiations precede class certification. *See In re Warfarin*, 391 F.3d at 535.

*See Bredbenner v. Liberty Travel, Inc.*, 2011 US Dist LEXIS 38663, at *29-30 (D.N.J. 2011).

Here, Class Counsel is highly experience in handling wage and hour class actions.  In addition, the class settlement was a product of approximately over six months of negotiations, which included multiple in-person and telephone settlement conferences before the Honorable Leda Dunn Wettre, the results of which culminated in this proposed settlement.  *Milliron v T-Mobile USA, Inc.*, 2009 US Dist LEXIS 101201, at *5 (D.N.J. 2009) (finding presumption applies when negotiations occurred before federal judge). The settlement formula and allocations were based on the review of thousands of pages of payroll and time records.  The parties engaged in substantial discovery and motion practice in this case.  Specifically, Class Counsel successfully opposed Defendants' motion for summary judgment on the Motor Carrier Act Exemption and the Trucking Industry Employer exemption issues. Class Counsel also successfully moved for conditional certification of the FLSA collective and Rule 23 Class action. Most importantly, not a single Class Member objected to the settlement.  Accordingly, the instant settlement is entitled to an initial

presumption of fairness.

II.     **The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.**

To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). The *Girsh* factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Bredbenner*, at 31-32 (*citing Girsh*).

These factors "embody a substantive inquiry into the terms of the settlement itself and a procedural inquiry into the negotiation process."  *Bredbenner*, at 32-33 (*citing In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 324 (3d Cir. 1998).

1.     **Litigation Through Trial Would be Complex, Costly, and Long (*Girsh* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. Indeed, "[t]his factor is intended to 'capture the probable cost, in both time and money, of continued litigation.'" *Bredbenner*, at 29-30 (*quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995). This case is no exception, with over 614 Class Members and claims under federal and state law, a class action trial would be extremely time intensive and expensive.  The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Girsh* factor weighs in favor of approval.

*See Bredbenner*, at 34 (By reaching a settlement at this stage of litigation, the parties "avoid the costs and risks of a lengthy and complex trial.") (*quoting Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010).

### 2. <u>The Reaction of the Class Has Been Positive (*Girsh* Factor 2)</u>

The second factor measures "whether members of the class actually support the settlement." *Bredbenner*, at 34 (*citing Prudential II*, 148 F.3d at 318). "Courts generally assume that silence constitutes 'tacit consent' to the settlement terms." *Bredbenner*, at 34 (*quoting Bell At. V. Bolger*, 2 F.3d 1304, 1314 n. 15 (3d Cir. 1993). Accordingly, "courts look to the 'number and vociferousness of the objectors.'" *Bredbenner*, at 34 (*quoting In re Gen. Motors*, 55 F.3d at 812).

Here, the Court approved Notices sent to Class Members that included the allocation formula, a clear and informative summary about the claims in this case, and specific instructions on how to object or opt-out of the settlement. To date, not a single Class Member has objected to the terms of the settlement. Accordingly, the reaction of the Class Members in this case strongly supports a finding in favor of approving the instant settlement.

### 3. <u>Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Girsh* Factor 3)</u>

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

The parties' discovery here meets this standard. Plaintiffs' Counsel conducted an investigation and legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and the proper measure of damages. They also researched

Defendants' likely affirmative defenses. After filing, Plaintiffs' Counsel conducted further investigations including, but not limited to, interviewing and obtaining declarations from Plaintiffs, Class Members and Collective Members, participating in discovery, depositions, class/collective certification motion practice, and summary judgment motion practice. *See* Newhouse Dec., ¶ 4, 12. Plaintiffs' Counsel have reviewed data and other documents produced by Defendants in response to discovery demands for Plaintiffs.  This factor favors preliminary approval.  *See Weber v. Gov't Employees Ins. Co.*, 262 F.R.D. 431, 438 (D.N.J. 2009) (finding that "[b]ased upon the discovery and review and pretrial preparation, Class Counsel was able to evaluate the substantial time and expense that would be required to prosecute the case further and realized that appeals would be likely even in the event of a successful resolution of any claims—individual or class"); *see also Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims").

4. **Plaintiffs Would Face Real Risks if the Case Proceeded (*Girsh* Factors 4 and 5)**

This factor measures the "'possible risks of litigation' by balancing the likelihood of success, and the potential damages award, against the immediate benefits offered by settlement." *Bredbenner*, at 37 (*citing Prudential II*, 148 F.3d at 319).  In weighing these considerations, "the Court should not press into the merits of the case and instead rely to a certain extent on the estimation provided by class counsel, who is experienced with the intricacies of the underlying case." *Id*. (citations omitted). Here, as in *Bredbenner*, the immediate cash payout provided by the class settlement offers a substantial benefit over the many risks and costs Plaintiffs would face in litigating their claims to conclusion.

First and foremost, although Plaintiffs' Counsel believe their case is strong, it is subject to

considerable risk. While the Court has already denied Defendants' motion for summary judgment, [Docket No. 108 (denying motion summary judgment on the grounds that Defendants waived their right to raise the Motor Carrier Act ("MCA") exemption as an affirmative defense)], there is still the chance that, if appealed following trial, the Third Circuit could overturn this Court's decision.

Furthermore, a trial on the merits would involve risks to both parties.  First, since this action is a class action, and involves numerous absent class members, it is possible that many class members my not wish to participate in trial of this action. Second, while Plaintiffs' Counsel believes that they could ultimately establish both liability and damages, this would require significant factual development.  Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of approval.

### 5.   Risks Involved in Maintaining the Class Through Trial (*Girsh* Factor 6)

Defendants would most likely seek appeal of the Court's determination, especially on the Court's finding that Defendants waived their right to raise the MCA exemption as an affirmative defense.  Settlement eliminates the risk and delay inherent in this process.  As such, this factor weighs in favor of approval.

### 6.   Defendants' Ability to Withstand a Greater Judgment (*Girsh* Factor 7)

Here, Defendant Galaxy Recycling, Inc. has filed for bankruptcy.  Defendant Gary Giordano is an individual. Only Defendant Smentkowski remains as a viable company that can pay the damages Plaintiffs seek in this action.  Defendant Smentkowski has consistently represented that it does not have the financial ability to pay for trial and all damages sought should Plaintiffs be successful. Thus, this factor weighs in favor of approval. *See* Newhouse Dec., ¶ 8.

### 7.   The Settlement Fund is Substantial, Even in Light of the Best Possible

### Recovery and the Attendant Risks of Litigation (*Girsh* Factors 8 and 9)

The determination of whether a settlement amount is reasonable "require[s] the court to consider whether proposed settlement falls within range of reasonableness in light of best possible recovery and attendant risks posed by litigation[.]" *Weber*, 262 F.R.D. at 446. "The settlement of a class action may be appropriate even where the settlement is only a fraction of the ultimate total exposure should the case be decided at trial." *See Lenahan v. Sears*, *Roebuck & Co.*, No. CIV. 02-0045, 2006 WL 2085282, at *16 (D.N.J. July 24, 2006) aff'd, 266 F. App'x 114 (3d Cir. 2008). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Id.* at *16 (approving a $15 million settlement when maximum exposure at trial may have been as high as $104 million because of the uncertainty of the final disposition of a trial); *see also Singleton*, 2014 WL 3865853, at *7 (approving a settlement of 40% of the estimated best possible outcome of the class action).

Here, Defendants have agreed to pay $312,475.04 to the 108 Authorized Claimants. This amount represents the sum of the settlement allocations designated for each Authorized Claimant[3] and provides much more than "a fraction of the potential recovery." Based on an in-depth analysis of the payroll and time records produced by Defendants, the amounts paid realistically reflect a substantial portion of the alleged underpaid wages owed to each member of the Class. Moreover, FLSA Collective Members are even receiving full liquidated damages equal to 100% of their allocation. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

### 8.   Additional Factors

Additional factors set for the by the Third Circuit in *Prudential* also support a finding in favor of approving the instant settlement. *Bredbenner*, at 32 (some of the *Prudential* factors

---

[3] The formula for calculating individual settlement allocations was included in the Notice to the class and can be found in the Settlement Agreement § 3.4.

include the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, extent of discovery on the merits, whether class members were accorded the right to opt out, whether attorneys' fees are reasonable, whether the procedure for processing individual claims under the settlement is fair and reasonable).

As mentioned earlier, Plaintiffs' Counsel is highly experienced in the prosecution of wage and hour actions.  The parties have engaged in extensive discovery, including discovery and have also exchanged additional documents for purposes of settlement, including payroll and route records, which served as the basis for Class Members' individual settlement allocations. In addition, all Class Members were afforded 60 days to opt-out or object to the terms of the settlement.

In sum, the factors set forth in *Girsh* and *Prudential* support a finding in favor of approval of the instant settlement.  Accordingly, Plaintiffs' respectfully request that the Court approve the Agreement.

## III.  <u>Final Certification of the FLSA Collective</u>

Plaintiffs also request that the Court grant final certification of the FLSA Collective for settlement purposes, consisting of all individuals who worked as drivers, driver's helpers, waste collectors and loaders from December 7, 2010 to December 31, 2015.

To certify a case as a collective action under the FLSA, the Court must determine that employees in the class are "similarly situated," within the meaning of § 16(b) of the Act. *See Sperling v. Hoffman-La Roche, Inc.*, 862 F.2d 439, 444 (3d Cir. 1888), aff'd, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). Courts in this district regularly use factors set forth in *Lusardi v. Xerox Corp. (Lusardi I)*, 118 F.R.D. 351 (D.N.J. 1987) to reach a final determination on class certification under the FLSA. *See, e.g., Bredbenner,* at 47-49 (citing examples of decisions). The *Lusardi* factors include "(1) the disparate factual and employment settings of the

11

individual plaintiffs; (2) the various defenses available to [defendants] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Lusardi I,* 118 F.R.D. at 359, vacated in part sub nom. *Lusardi v. Lechner (Lusardi II)*, 855 F.2d 1062 (3d Cir. 1988). This list is neither exhaustive nor mandatory to grant certification. *Bredbenner,* at 49 (*citing Ruehl*, 500 F.3d at 388 n.17).  The Court in *Bredbenner* also found that "since the analysis required for final certification, largely overlaps with class certification analsyis under Federal Rules of Civil Procedure 23(a), the Court need only address the *Lusardi* factors in passing." *Bredbenner,* at 49 (citations and quotations omitted).

Here, as in *Bredbenner*, the factual circumstances underlying the claims of each putative collective member are very similar.  Each worked as a driver, driver's helpers, waste collectors, and loaders for Defendants, each worked more than forty hours in a week, each was not paid overtime at the proper overtime rate, and each seek the same relief under the FLSA. Accordingly, the collective, as a whole, is similarly situated to the class representatives.  Any individualized defenses that would interfere with final certification are moot, as the case need only be certified in order to effectual settlement.

In addition, the standard for approving class-wide settlements under the FLSA are more lenient than under Rule 23 class actions.  Indeed, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," and thus, FLSA collective action settlements do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Instead, courts approve FLSA settlements as long as they are reached as a result of contested litigation to resolve *bona fide* disputes. *See McMahon v Olivier Cheng Catering & Events, LLC*,

2010 US Dist LEXIS 18913, at 15 (S.D.N.Y. 2010). Here, the Court has already granted Rule 23 class certification. Accordingly, final collective certification should be granted as well for purposes of settlement.

Finally, this settlement resolves a *bona fide* dispute and was reached after vigorous arm's-length settlement negotiations. Just as in *Bredbenner*, the dispute in this case is over the hours worked and compensation due.  As such, the instant settlement resolves a bona fide dispute and should be certified as a collective to facilitate final approval of the settlement.

### APPLICATION FOR ATTORNEYS' FEES AND SERVICE AWARD

Class Counsel submits this unopposed application for approval of attorneys' fees and costs and for approval of service awards. Class Counsel seek $450,000.00 to cover attorneys' fees and costs. Class Counsel also seek approval of service award in the amount of $10,000 for Named Plaintiff Juan Luna Dominguez.

For the reasons set forth below, Class Counsel respectfully submits that the attorneys' fees and expense reimbursement they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved in this case. Class Counsel also respectfully submit that the service award for Named Plaintiff is proper in recognition of the services they rendered on behalf of the class.

### I.      Class Counsel Is Entitled To a Reasonable Fee

Class Counsel is entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid wages on behalf of the class. The Agreement, which has been preliminarily approved by the Court, provides that Class Counsel may apply for no more than $450,000.00 for professional fees, costs, expenses, service award and settlement claims administrator's fees. *See* Agreement ¶ 3.2(A), at Docket No. 131, Document No. 3.

In working on this litigation, Class Counsel expended approximately 1983.00 hours of attorney, paralegal, and staff member time for a lodestar total of $490,997.57. *See* Newhouse Decl. ¶ 13. Additionally, Class Counsel incurred $7,310.37 in costs and expenses. *See* Newhouse Decl. ¶ 14. Accordingly, Class Counsel is seeking approval of $442,689.63 in attorneys' fees and $7,310.37 in costs.

## II.     The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Third Circuit

In wage and hour class action lawsuits, the prevailing methodology in the Third Circuit is to employ the percentage of recovery method to award attorneys' fees in common fund cases. *Bredbenner*, at *52-53 (*citing In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F3d 768, 821 (3d Cir 1995)).  The Third Circuit favors percentage of recovery in common fund cases because it permits courts to grant fees in a manner that rewards counsel for its success and penalizes it for failures.  *In re Rite Aid Corp. Sec. Litig.*, 396 F3d 294, 300 (3d Cir. 2005).

The Third Circuit in *Gunter v. Ridgewood Energy Corp.* set forth several factors for assessing the appropriateness of attorneys' fees: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7)   the awards in similar cases. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (citations omitted).

### 1.   Size of the Fund and Number of Persons Benefitted

In this case, the substantial settlement fund is equal to over $1,200,000.00.  Although the fund in this case is not a "mega-fund," it is nevertheless substantial. This settlement also

14

represents a significant benefit considering the risk that litigating this case through trial could have resulted in a finding of no liability to the Defendants.  Indeed, as explained *supra* (pp. 15-16), Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the possible appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.

As such, the quality of the settlement and benefit to Authorized Claimants supports a finding in favor of approving this settlement.

### 2.  Presence or Absence of Substantial Objections

The notice to the Class Members, which was preliminarily approved by the Court, clearly explains the sum of payment of Class Counsel's fees.  To date, no Class Member has objected to the requested attorneys' fees, expense reimbursement or method of disbursement. Newhouse Decl. ¶ 9. The lack of objections to Class Counsel's fee and cost reimbursement request is indicative of the reasonableness of the requested award and weighs in favor of approving it. *Bredbenner*, at 52 (D.N.J. 2011) (*citing Lenahan v Sears, Roebuck & Co.*, 2006 US Dist LEXIS 60307 (D.N.J. 2006)).

### 3.  Skill and Efficiency of Class Counsel

The skill and efficiency of class counsel is "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Bredbenner,* at *56-57 (citations omitted).

Here, Class Counsel is highly experienced in handling wage and hour class actions, and handled this complex class action in kind.  Newhouse Decl., ¶¶ 18-19. Specifically, Class Counsel was victorious in its class/collective certification motion practice and successfully opposed Defendants' motion for summary judgment on the Motor Carrier Act Exemption and the Trucking

Industry Employer exemption issues.  Newhouse Decl., ¶¶ 4, 14. Despite the substantial motion practice and discovery, the favorable and expeditious settlement under these circumstances is testament to the skill and expertise of Class Counsel in handling the instant action.

### 4.   <u>Hours Worked and Risk of Non-Payment</u>

Courts consider the risk of non-payment in light of the Defendant's ability to satisfy an adverse judgment, *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 152 (D.N.J. 2004), or the risk of establishing liability at trial. *In re Cendant Corp. Litig.*, 264 F.3d 201, 339 (3d Cir 2001).

Here, one of the Defendants is an individual and another declared bankruptcy.  Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Newhouse Decl. ¶ 17. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event the case was unsuccessful.

Moreover, the circumstances of this case presented hurdles to a successful recovery if parties didn't settle.  Further litigation here would cause additional expense and delay. Indeed, if the parties were unable to settle, a fact-intensive trial would necessarily follow.  A trial would be lengthy and complex and would consume tremendous time and resources for the parties and the Court.  Any judgment would likely be appealed, further extending the litigation.  Accordingly, a trial on the merits would involve significant risks for Class Members and Class Counsel as to both liability and damages. While Class Counsel believes that it can ultimately establish both

liability and damages, this would require significant factual development. Class Counsel is experienced and realistic, and understands that the resolution of liability issues are inherently uncertain in terms of outcome and duration.

Class counsel has expended over 1983.00 hours in bringing this case to resolution. Newhouse Decl., ¶ 13. The hours recorded were incurred investigating claims, interviewing putative class members, reviewing documents produced by Defendants, drafting and opposing motions and letters to the court, and engaging in substantial settlement negotiations. Newhouse Decl., ¶ 12.[4] The complexity of the issues before the Court, coupled with the risk of non-payment, supports a finding that the fee requested is reasonable.

## 5.  Awards in Similar Cases

In addressing this factors, "the Court should (1) compare the actual award requested to awards in comparable settlements, and (2) ensure that the award is consistent with what an attorney would have likely received if the fee was negotiated on the open market." *Bredbenner*, at 59-60 (citations omitted). In common fund cases, fee awards generally range from 19% to 45% of the settlement fund. *Bredbenner*, at 59-60 (*citing In re Gen. Motors*, 55 F.3d at 822 (*citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990))).

The fee award request in this case is approximately 37% percent of the settlement fund, which is within the proper range and consistent with fee awards in similar wage and hour cases within the Third Circuit. *Bredbenner*, at 59-60 (citing numerous cases).  The percentage award in this case is also consistent with prevailing contingent fee rates in non-class action cases. *Id.*

## 6.  Lodestar Cross-Check

In determining the lodestar for cross-check, the court is not required to engage in a "full-

---

[4] Each hour was contemporaneously recorded at the time the work was performed.  To the extent the Court is not satisfied with Class Counsel's declarations, Class Counsel would be happy to submit the billing records, which amount to over 50 pages.

17

blown lodestar inquiry," or "mathematical precision." *Bredbenner*, at 61-62 (citations omitted); *Dewey v Volkswagen of Am.*, 728 F Supp 2d 546, 592 (D.N.J. 2010) (Where there have been no objects to the lodestar calculations, a full-blown lodestar analysis is unnecessary and inefficient use of judicial resources.).

To date, Class Counsel's attorneys and paralegals have worked 1983.00 hours for a total of $490,997.57. Newhouse Decl., ¶¶ 13-14. The fee request under the percentage of recovery method is equal to 0.90 times the lodestar. The Third Circuit has approved a cross-check multiplier of 3. *In re Cendant Corp. Litig.*, 264 F3d 201, 256 (3d Cir. 2001). The Court in *Bredbenner* approved a cross-check multiplier of 1.88.   A multiplier of 0.90 is entirely reasonable and reflects the risks assumed by assumed by Class Counsel in taking this case on a contingency basis and the level of skill brought to this complex litigation. Accordingly, Class Counsel respectfully requests that the Court find the requested fee proper even under the lodestar method.

## 7.   Additional Expenses

"Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal citation and quotation marks omitted).   Here, Class Counsel incurred actual expenses of $7,310.37 for costs such as court and process server fees, postage and courier fees, transportation, discovery costs, such as transcript fees and photocopies, and legal research. Newhouse Decl. ¶ 14. These expenses were incidental and necessary to the representation of Plaintiffs and the Class and adequately recorded. *Id.*

## III.   The Requested Service Award is Reasonable and Should Be Approved

Service awards are fairly common in class action lawsuits involving a common fund for

distribution to the class. *Bredbenner*, at 63. The service award that the Plaintiffs request is reasonable given the significant contributions that Named Plaintiff made to the prosecution and resolution of the lawsuit. Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, *7 (S.D.N.Y 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006). The purpose of service awards is to "compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of class action litigation,' id., and to 'reward the public service' of contributing to the enforcement of mandatory laws." *Bredbenner,* at 63-64 (*citing In re Cendant*, 232 F. Supp. 2d at 344 (*citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990)); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009))).

Here, Named Plaintiff Juan Luna Dominguez took a significant risk. In the workplace context, where workers are often blacklisted if they are considered "trouble makers," plaintiffs who sue their employers are particularly vulnerable to retaliation. *See Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005); *see also Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at 14 (S.D.N.Y. 2012) (recognizing that plaintiffs in wage and hour case "fac[e] potential risks of being blacklisted as 'problem' employees"); *Guippone v. BH S&B Holdings, LLC*, 2011 WL 5148650, at *7 (S.D.N.Y. 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members."). Even though Named Plaintiff no longer

works for Defendants, he still incurred a risk in commencing this action. *Guippone*, at *7 ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person.").

Moreover, Named Plaintiff Juan Luna Dominguez also contributed a significant amount of time and effort to the case by providing Class Counsel with detailed factual information regarding his job duties, the job duties of their co-workers, Defendants' policies, and other information relevant to his claims and the claims of the Class Members. He also regularly made himself available to communicate with Class Counsel when necessary, including throughout the settlement process, and relaying messages to class members.  He attended two in-person settlement conferences and was deposed. In addition, Named Plaintiff regularly followed up with Class Counsel to check on the status of the case and ensure that it was moving toward resolution. The benefits of the class wide settlement agreement are as a direct result of the services rendered by the Named Plaintiff.

The requested Service Award of $10,000 to Named Plaintiff Juan Luna Dominguez is well within the awards regularly provided in similar cases. *Bredbenner*, 66-67 (citing cases of awards ranging between $5,000 and $30,000); *see also* 4 Newberg on Class Actions § 11.38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000).  In addition, the Service Award amounts to approximately 0.8% of the total recovery, which is far below what other courts have held to be a reasonable percentage. *See Reyes v. Altamarea Grp., LLC*, 2011 WL 4599822, at 9 (S.D.N.Y. 2011); *Parker v. Jekyll & Hyde Entm't Holdings*, LLC, 2010 WL 532960, at 2 (S.D.N.Y. 2010) (finding that service awards totaling 11% of the total recovery are reasonable).

Most importantly, the notice to each Class Member advised them that a portion of their settlement allocation will be distributed as a service award to the Named Plaintiff.  The fact that

not one Authorized Claimant has objected to the service award strongly supports a finding that the service award is fair, reasonable, and should be approved by the Court.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) approve the settlement as fair, reasonable, and adequate for both Rule 23 Class Members and FLSA Collective Members, (2) bind all Rule 23 Class Members who have not timely opted out to the Released State Law Claims as set forth in the Agreement, (3) award Class Counsel attorneys' fees and costs in the amount equal to $450,000.00, (4) award services awards to Named Plaintiff Juan Luna Dominguez in an amount equal to $10,000.00, and (5) dismiss the Litigation with prejudice.

Dated: New York, New York
        April 24, 2017

Respectfully submitted,

VIRGINIA & AMBINDER, LLP

/s/ Jack L. Newhouse, Esq.
Jack L. Newhouse, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Tel:     (212) 943-9080
lambinder@vandallp.com

*Attorneys for Plaintiffs and the Settlement Class*

21