## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JUAN LUNA DOMINGUEZ *et al.*,

        Plaintiffs,

v.

GALAXY RECYCLING INC. *et al.*,

        Defendants.

Civil Action No.

12-7521 (LDW)

**MEMORANDUM OPINION**

Before the Court is Plaintiffs' motion to (1) grant final approval of a proposed settlement as fair, reasonable, and adequate for class members and Fair Labor Standards Act collective members, (2) bind all class members who have not opted out to the released state law claims set forth in the stipulation, (3) award class counsel fees and costs, (4) award a service award to named plaintiff Juan Luna Dominguez, and (5) dismiss the action with prejudice as to defendant Joseph Smentkowski, Inc., doing business as Galaxy Carting and/or Smentkowski Garbage Removal, and without prejudice as to the other defendants. (ECF No. 139). No opposition to this motion has been filed. The Court having considered the motion papers and having held an in-person fairness hearing on April 26, 2017, and for the reasons set forth below, Plaintiffs' motion is **GRANTED**.

## I. UNDERLYING FACTS AND PROCEDURAL HISTORY

Named plaintiffs, Juan Luna Dominguez and Marlon Jose Granados,[1] were employees of defendants Galaxy Recycling Inc. and Joseph Smentkowski, Inc., doing business as Galaxy Carting or Smentkowski Garbage Removal, which performed residential waste collection. (Am.

---

[1] Plaintiff Granados was removed as a class representative when preliminary approval of this settlement was granted. (*See* ECF No. 135, ¶ 4).

Compl., ECF No. 29, ¶¶ 7–14, 25–26). Plaintiffs contend that defendant Gary Giordano was an officer or owner of those entities. (ECF No. 29 ¶¶ 11, 30–32). Plaintiffs allege that Defendants failed to pay them and similarly situated employees proper overtime wages for their work in excess of forty hours each week. (ECF No. 29 ¶¶ 27, 39–40, 43).

Plaintiffs commenced this action on December 7, 2012. (Compl., ECF No. 1). Their First Amended Complaint, filed on consent on October 30, 2013, asserts class and collective claims against Galaxy Recycling Inc., Joseph Smentkowski, Inc. (doing business as Galaxy Carting and Smentkowski Garbage Removal), and Giordano (collectively, "Defendants") for overtime violations under the Fair Labor Standards Act ("FLSA") and New Jersey minimum wage law. (ECF No. 29 ¶¶ 1, 15–24, 34–44). United States District Judge Faith S. Hochberg granted a motion for conditional certification of the class for notification purposes under 29 U.S.C. § 216(b) on September 20, 2013. (ECF No. 23).

Plaintiffs, on April 24, 2015, moved for class certification under Federal Rule of Civil Procedure 23(b)(3), identifying the proposed class as "[a]ll current and former employees of GALAXY RECYCLING, INC. or JOSEPH SMENTKOWSKI, INC. d/b/a GALAXY CARTING and/or SMENTKOWSKI GARBAGE REMOVAL who performed work as drivers, driver's helpers, waste collectors, and loaders from December 7, 2010 through the present[;] [t]his does not include supervisors, officers, executive, managerial, or administrative personnel." (Mem. of Law in Supp., ECF No. 87-1, at 1). On December 10, 2015, United States District Judge Madeline Cox Arleo granted that motion and also denied a motion by Defendants for summary judgment under Federal Rule of Civil Procedure 56. (ECF Nos. 107, 108).[2]

---

[2] Judge Arleo subsequently denied a motion to reconsider her denial of Defendants' motion for summary judgment. (ECF No. 116).

Following a settlement conference before United States Magistrate Judge James B. Clark, III and two settlement conferences before the undersigned, the parties reached a tentative settlement. On November 15, 2016, after the parties had consented to the undersigned's plenary jurisdiction over this action, this Court granted Plaintiffs' motion for preliminary approval of the parties' proposed settlement agreement and notice to class members. (ECF Nos. 131, 135). In this Order, the Court found, among other things, that the settlement was a non-collusive product of arm's length negotiations. (ECF No. 135 ¶¶ 2–3). The Order also set a schedule for class notification procedures; under this schedule, February 13, 2017 was the deadline for class members to opt out of or object to the settlement. (ECF No. 135 ¶ 9). The Court has received no objections to the proposed settlement.

## II. MOTION AND ANALYSIS

Plaintiffs now move for final approval of the class settlement, approval of the FLSA collective claim settlement, an award of counsel fees and costs, and approval of a service award to named plaintiff Juan Luna Dominguez. (ECF No. 139). The Court addresses each of these in turn.

### The Proposed Class Settlement

Plaintiffs first seek final approval of the proposed settlement. (ECF No. 139). Class counsel explains that the settlement administrator mailed notice of the proposed settlement to 614 potential class and collective members. (Newhouse Decl., ECF No. 139-1, ¶9). He further recounts that, even after efforts to locate class members whose notices had been returned as undeliverable, 135 class members were not located or notified. (*Id.*). He states that between 83 individual claim forms and 25 consent-to-join forms, there are presently 108 authorized claimants. (*Id.*) He notes that no class members have opted out of the class or objected to the proposed settlement. (*Id.*). An in-person fairness hearing occurred before the undersigned on April 26,

2017. No objections were made to the proposed settlement during this hearing. (*See* Tr. of Apr. 26, 2017 Fairness Hearing, ECF No. 140, at 16).

### *Initial Presumption of Fairness*

Federal Rule of Civil Procedure 23(e) requires judicial determination of whether a proposed class action settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016), *cert. denied* 137 S. Ct. 591, 137 S. Ct. 607 (2016) [hereinafter *In re NFL Players*]. An initial presumption of fairness applies when four factors are met: "'(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re NFL Players*, 821 F.3d at 436 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)); *see also In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) [hereinafter *In re GM Trucks*].

An examination of these factors compels an initial presumption of fairness here. As Plaintiffs stress, the parties' counsel engaged in months of settlement negotiations, including multiple settlement conferences before the Court, thus demonstrating arm's length efforts to reach the proposed settlement. (*See* ECF No. 139-1 ¶¶ 8, 12). Sufficient discovery is evidenced by class counsel's recounting of extensive document production and review, as well as depositions, declarations, and interviews. (*See id.*). Class counsel provide a review of their participation in similar class actions, amply demonstrating their experience. (*Id.* ¶¶ 18–19). Finally, there have been no objections from any class member.

*The* **Girsh** *Factors*

Further assessing the fairness and reasonableness of the proposed settlement requires applying nine factors known as the *Girsh* factors:

     a.  The probable complexity, expense, and duration of the litigation;

     b.  The reaction of the class to the proposed settlement;

     c.  The stage of the proceedings and the extent of completed discovery;

     d.  The risks of establishing the defendant's liability;

     e.  The risks of establishing damages;

     f.  The risks of maintaining an action through trial;

     g.  The ability of the defendant to withstand a greater judgment;

     h.  The range of reasonableness, in light of the best possible recovery at trial; and

     i.  The range of reasonableness, in light of the inherent risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also In re NFL Players*, 821 F.3d at 437; *In re Cendant Corp. Litig.*, 264 F.3d at 231–32. The proponents of the proposed settlement bear the burden of demonstrating that these factors weigh in favor of approval. *In re NFL Players*, 821 F.3d at 437; *In re Cendant Corp. Litig.*, 264 F.3d at 232.

The Court examines these factors individually. Addressing the probable complexity, expense, and duration of the litigation, Plaintiffs argue that continuing with litigation in this matter would be timely and expensive, given 614 potential class members and the assertion of both federal and state claims. (Mem. of Law in Supp., ECF No. 139-3, at 6). The Court agrees that the potential costs of a trial, in terms of time, money, and effort, weigh in favor of approving the settlement.

As to the reaction of the class to the proposed settlement, the Court further agrees with Plaintiffs that the lack of any objections by class members to the proposed settlement indicates a

generally positive reaction. *See In re GM Trucks*, 55 F.3d at 812 ("Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993))).

The Court next addresses the stage of the proceedings and the extent of discovery completed. A significant amount of discovery in this matter has been completed, though Plaintiffs note that additional discovery would have to occur before the matter could be tried. (*See* ECF No. 139-3 at 7). As a result of the extensive discovery taken, counsel appear to have "developed enough information about the case to appreciate sufficiently the value of the claims." *In re NFL Players*, 821 F.3d at 438–39.

Concerning the risks of establishing Defendants' liability and establishing damages, Plaintiffs contend that proceeding with litigation would involve such risks, given that there are still facts to develop and that even a favorable ruling for Plaintiffs in this action, were it to continue through dispositive motions and trial, could be appealed successfully. (ECF No. 139-3 at 8–9). Given these risks and the risks that inhere in seeking damages at trial, it does appear that a quantifiable and immediate settlement presents a benefit over further litigation with an uncertain outcome.

Addressing the risks of maintaining this action through trial, Plaintiffs again raise the specter of an adverse result on appeal. (ECF No. 139-3 at 9). This factor favors approving the proposed settlement.

The Court must next consider Defendants' ability to withstand a greater judgment. The proposed settlement contemplates a total potential liability of $1.2 million, including attorney's fees and costs. (ECF No. 139-1 ¶ 12; Proposed Settlement Agreement, ECF No. 131-3, ¶ 3.4). Plaintiffs urge that defendant Giordano is an individual and that defendant Galaxy Recycling, Inc.

has filed for bankruptcy, thus effectively restricting the source of recovery to defendant Joseph Smentkowski, Inc., which has represented that it has no capacity to pay for trial and the damages Plaintiffs seek. (ECF No. 139-3 at 9). Having met with the parties several times and been privy to Defendants' financial condition, the Court is satisfied that Defendants could not withstand a judgment significantly greater than the proposed settlement amount. *See In re Cendant*, 264 F.3d at 240.

As to the reasonableness of the settlement fund in comparison to the best possible recovery at trial and the inherent risks of continued litigation, Plaintiffs urge that FLSA collective members would receive "full liquidated damages equal to 100% of their allocation" (ECF No. 139-3 at 10) and that class members would "receive 4.5% of their W-2 or 1099 reported gross earnings" during the class period (ECF No. 131-3 ¶ 3.4). While the exact relationship between the class recovery and potential recovery at trial is unclear, Plaintiffs assert that, "[b]ased on an in-depth analysis of the payroll and time records produced by Defendants, the amounts paid realistically reflect a substantial portion of the alleged underpaid wages owed to each member of the class." (ECF No. 139-3 at 10). Consequently, the Court finds that the proposed settlement would provide class members with a substantial portion of the potential benefits of continued litigation, without the attendant risks or the additional time and expense. The Court thus finds that, on balance, the *Girsh* factors weigh, in favor of approving the proposed settlement.

### *The* Prudential *Factors*

The Court of Appeals for the Third Circuit, in *In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283 (3d Cir. 1998) [hereinafter *In re Prudential*], proposed adding to the nine *Girsh* factors, "when appropriate," six additional factors:

> [1] the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent

of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;

[2] the existence and probable outcome of claims by other classes and subclasses;

[3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants;

[4] whether class or subclass members are accorded the right to opt out of the settlement;

[5] whether any provisions for attorney's fees are reasonable; and

[6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 323.

The Court observes that only the fourth, fifth, sixth, and some portions of the first factor appear applicable to this matter. As already noted under the *Girsh* factors, the parties have engaged in substantial discovery related to the merits of this action, and the proposed settlement appears reasonable in relation to the potential outcomes and risks of continued litigation. As also discussed above, class members were afforded an opportunity to opt out or object, though none has. As shall be discussed below in considering class counsel's application for attorney's fees, class members received notice of the proposed award of attorney's fees and, though the proposed award is slightly higher than some comparable awards, it is nevertheless reasonable. Further, the proposed settlement agreement sets out detailed procedures for notice to class members and claims administration, and these appear fair and reasonable to the class members. (ECF No. 131-3 ¶¶ 2.1, 2.5, 2.6, 3.1).

In view of the analysis above, the Court finds that there is a strong initial presumption of fairness given the circumstances of the proposed settlement agreement and that the *Girsh* and

*Prudential* factors weigh in favor of approving the settlement as fair and reasonable. Accordingly, the proposed settlement is granted final approval.

## Approval of the FLSA Collective Action Settlement

Plaintiffs next seek judicial approval of the settlement of their FLSA collective claims. (ECF No. 139).[3] Approval of the settlement of an FLSA claim requires first a final certification of the FLSA collective and then assessment of the settlement terms. *Bredbenner v. Liberty Travel, Inc.*, Civ. A. Nos. 09-905 (MF), 09-1248 (MF), 09-4587 (MF), 2011 WL 1344745, at *16 (D.N.J. Apr. 8, 2011).

### Final Certification of the FLSA Collective

Plaintiffs' motion seeks final certification of an FLSA collective consisting of "all individuals who worked as drivers, driver's helpers, waste collectors and loaders from December 7, 2010 to December 31, 2015." (ECF No. 139-3 at 11). FLSA § 216(b) requires that members of a collective must be "employees similarly situated" to the named plaintiff and must opt in to the action. 29 U.S.C. § 216(b). Courts typically consider factors set forth by this Court in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), *vacated in part sub nom. Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988), in assessing certification of an FLSA class. *Id.* at 359; *see also Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388–89 & n.17 (3d Cir. 2007) ("Neither FLSA nor the ADEA define the term 'similarly situated,' but we have approved of the balancing factors in . . . *Lusardi*."). *Lusardi* essentially defined four factors: (1) the factual and employment settings of the individual plaintiffs; (2) potentially available defenses that would be unique to individual plaintiffs; (3)

---

[3] The settlement of an FLSA collective claim may only be adopted under supervision of the Secretary of Labor or with approval of a district court. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Davis v. Essex Cnty.*, Civ. A. No. 14-1122 (CCC), 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015); *Gabrielyan v. S.O. Rose Apartments LLC*, Civ. A. No. 15-1771 (CCC), 2015 WL 5853924, at *1 (D.N.J. Oct. 5, 2015).

fairness and procedural considerations; and (4) the propriety of preliminary filings required by statute. *See Lusardi*, 118 F.R.D. at 359. The Third Circuit also identified as relevant factors to be considered "whether the plaintiffs are employed in the same corporate department, division and location; advanced similar claims . . . ; sought substantially the same form of relief; and had similar salaries and circumstances of employment." *Ruehl*, 500 F.3d at 388 n.17.

Taking these various factors into consideration, the Court finds that final certification of the FLSA collective is appropriate. The very definition of the proposed collective, "drivers, driver's helpers, waste collectors and loaders," limits its scope to employees of defendants who performed similar jobs, *i.e.*, employees who had first-hand involvement in waste collection. (*See* ECF No. 139-3 at 11). As the claims asserted on behalf of the proposed collective members are for alleged overtime violations, the relevant circumstances of employment are allegedly similar. (*See* Am. Compl., ECF No. 29, ¶¶ 29–30; ECF No. 139-3 at 12). As the parties' proposed settlement has been approved, there is no risk of defendants asserting unique defenses. Furthermore, the Court sees no procedural or fairness obstacles to certification of the collective. Accordingly, final certification of the FLSA collective is granted.

**Final Approval of the FLSA Collective Claims**

Scrutinizing a proposed settlement of an FLSA claim, involves three steps: determining whether the settlement resolves a bona fide dispute between the parties; examining whether the proposed settlement would be fair to the plaintiffs; and ensuring that the proposed settlement does not otherwise frustrate the intent of the FLSA. *Davis v. Essex Cnty.*, Civ. A. No. 14-1122 (CCC), 2015 WL 7761062, at \*2 (D.N.J. Dec. 1, 2015); *Gabrielyan v. S.O. Rose Apartments LLC*, Civ. A. No. 15-1771 (CCC), 2015 WL 5853924, at \*2 (D.N.J. Oct. 5, 2015); *Bredbenner*, 2011 WL 1344745 at \*18. A bona fide dispute may include doubt as to the plaintiffs' chances of succeeding

at trial, questions as to potential applicability of FLSA or the proper computation of wages, or disputes as to the actual number of hours worked. *Sheinberg v. Sorensen*, Civ. A. No. 00-6041 (CCC), 2016 WL 3381242, at *9 (D.N.J. June 14, 2016); *Davis*, 2015 WL 7761062 at *2; *Gabrielyan*, 2015 WL 5853924 at *2.

Given that the settlement in this case apparently grants all members of the FLSA collective one hundred percent of their damages, it is not apparent that the Court need even examine whether this settlement revolves a *bona fide* dispute, but it considers this out of an abundance of caution. Plaintiffs' submissions on their motion for preliminary settlement approval adequately demonstrate the existence of a *bona fide* dispute, namely whether Plaintiffs were more properly classified as employees or as independent contractors. Those papers also identify other unresolved issues: whether Plaintiffs, if employees, fell under the "outside sales" exemption or the Motor Carrier Act exemption; that the amount of any resulting judgment would hinge largely on whether the two-year limitations period for non-willful violations or the three-year period for willful violations is applied; and ongoing disagreement concerning the number of hours actually worked by each Plaintiff. Accordingly, the Court concludes that the proposed settlement does resolve a *bona fide* dispute.

In assessing the fairness of a proposed FLSA settlement, courts generally apply the *Girsh* factors, addressed above. *Bettger v. Crossmark, Inc.*, Civ. A. No. 13-2030 (CRC), 2015 WL 279754, at *7 (M.D. Pa. Jan. 22, 2015); *Singleton v. First Student Mgm't*, Civ. A. No. 13-1744 (JEI), 2014 WL 3865853, at *8 (D.N.J. Aug. 6, 2014); *Brumley v. Camin Cargo Control*, Civ. A. No. 08-1798 (JLL), 2012 WL 1019337, at *4–5 (D.N.J. Mar. 26, 2012). As the Court has already determined that the proposed settlement is fair and reasonable after application of the *Girsh* factors, this factor is considered satisfied. Furthermore, given that this settlement provides 100% recovery

for FLSA collective members and is a product of arm's length negotiations, there is nothing suggesting that it would otherwise frustrate the intent of FLSA. Accordingly, the Court grants final approval of the FLSA collective claim settlement.

**<u>Class Counsel's Application for Attorneys' Fees and Costs</u>**

Class counsel asks the Court to approve its application for an award of attorneys' fees and costs totaling $450,000. (ECF No. 139-3 at 13–18). The Court first makes note of counsel's inclusion in the settlement agreement of a so-called "clear sailing provision," under which Defendants agreed not to object to class counsel's fee request so long as it did not exceed $450,000. (Settlement Agreement and Release, ECF No. 131-3, ¶ 3.2(A)). The Third Circuit has noted that such provisions "deserve careful scrutiny" given the risk that class counsel may have agreed to reduce the resulting benefit to the class in order to secure an agreement that the defendant will not object to class counsel's fee request. *In re NFL Players*, 821 F.3d at 447. Accordingly, courts presented with clear sailing provisions "should review the process and substance of the settlement and satisfy itself that the agreement does not indicate collusion or otherwise pose a problem." *Id.* During the Court's active role in negotiating the settlement in this action, it has seen no sign that the clear sailing provision included in this settlement agreement is collusive rather than simply a reflection of the fee award that the parties agreed upon as a reasonable term of the settlement.

A court assessing the propriety of a proposed fee award may do so either by looking at the percentage of the total recovery it represents, which is typically applied in common-fund cases, or by the lodestar method, which is more often used in fee-shifting cases. *In re GM Trucks*, 55 F.3d at 821; *Bredbenner*, 2011 WL 1344745 at *19. The percentage of recovery method is preferred for common-fund cases in order to prevent unjust enrichment of class counsel: to reward counsel's successes and penalize their failures. *In re GM Trucks*, 55 F.3d at 821. Nevertheless, a Court may

still use the lodestar method to confirm that an award approved as a percentage of the recovery is not out of all proportion to the work performed. *In re GM Trucks*, 55 F.3d at 820–21 & n.40. In considering whether a proposed award of attorney's fees is appropriate as a percentage of the recovery, a court should assess seven factors identified by the Third Circuit:

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
> (3) the skill and efficiency of the attorneys involved;
> (4) the complexity and duration of the litigation;
> (5) the risk of nonpayment;
> (6) the amount of time devoted to the case by plaintiffs' counsel; and
> (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *see also Bredbenner*, 2011 WL 1344745 at *19.

Class counsel here asks the Court to approve a total award of $450,000, comprising $7310.37 in costs and $442,689.63 in fees. (ECF No. 139-3 at 13–14). Class counsel asserts that this fee amount, which represents approximately 37% of the total settlement fund, should be approved as reasonable. (*See* ECF No. 139-3 at 14–18). Applying the *Gunter* factors in turn, the Court first observes that the settlement agreement creates a total settlement fund of $1.2 million for a class of 614, but there are only 108, authorized claimants who will receive payments totaling $312,475.04.[4] Nonetheless, this settlement represents a substantial fund and benefit to the class, and, as previously noted, approximates 100% of damages for FLSA collective members. *See Bredbenner*, 2011 WL 1344745 at *19.

---

[4] The Court notes that, pursuant to the terms of the settlement agreement, class members became barred from seeking recovery under the agreement 60 days (or 75 days with extenuating circumstances) after the settlement administrator's initial mailing of notice. (ECF No. 131-3 ¶ 2.5). As the settlement administrator mailed notice of the settlement to all class members on December 14, 2016 (ECF No. 139-1 ¶ 9), it appears that there will not be more than the present 108 authorized claimants.

Class counsel recounts the notification to all class members not only of the settlement terms but also of the proposed fee award. (ECF No. 139-3 at 15). The Notice of Proposed Class Actions Settlement that the administrator mailed to class members included notice that class counsel would apply for a fee award of up to 37% percent of the gross settlement fund and explained the procedure for objection to any part of the settlement. (Notice of Proposed Class Action Settlement, ECF No. 131-4, ¶¶ 11, 12). Thirty-seven percent of the $1.2 million gross settlement fund is $444,000, and class counsel's proposed fee award of $442,689.63 thus comports with that notice. No class member has asserted any objection to the proposed fee award, and the Court consequently finds that this factor weighs in favor of approval.

The skill and efficiency of class counsel can be assessed by a broad examination of the course of litigation and the result achieved in light of the circumstances of the action. *See Bredbenner*, 2011 WL 1344745 at *20 ("The skill and efficiency of class counsel is 'measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." (quoting *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000))). Class counsel has provided a detailed recitation of its experience in similar matters, and its skill in prosecuting wage and hour class actions is evident from its conduct in this matter. (*See* ECF No. 139-1 ¶¶ 19–26).

Addressing the fourth *Gunter* factor, this Court is very familiar with the complexity and duration of this case. Class counsel has recounted the motion practice, extensive discovery, and protracted settlement negotiations in which the parties and counsel engaged. (ECF No. 139-1 ¶¶ 4–8). The duration of the case is evident from the procedural history included above in this opinion and from the docket number alone.

As for the risk of non-payment, class counsel has explained that it entered into this litigation with no guarantee of payment and that there were significant hurdles to overcome in achieving the resolution they did. (*See* ECF No. 139-1 ¶ 17, ECF No. 139-3 at 8–9). Addressing the amount of time expended, class counsel avers having expended 1980 hours on this matter (inclusive of work by paralegals and staff), with attorney Jack Newhouse having worked 406.43 hours, attorney Lloyd Ambinder having worked 303.9 hours, and attorney Grisell Hernandez having worked 195.05 hours. (ECF No. 139-1 ¶¶ 21–24). Class counsel also report that they anticipate spending additional time on issues related to administration of the settlement. (ECF No. 139-1 ¶ 16). Given this reporting and the obvious time and effort that went into class counsel's litigation of this matter, the Court finds that this factor weighs in favor of the approved fee award.

Finally, the Court addresses how the proposed fee award compares to fees awarded in similar cases. The Third Circuit has noted that fee awards in common-fund cases have ranged from 19 to 45% of the settlement fund. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001) (quoting *In re GM*, 55 F.3d at 822).[5] It warned, however, that given the wide range of percentage fees awarded, a court "may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 736. While the proposed 37% fee award in this matter is somewhat higher than the more typical 33%, it is within the 19%–45% range recognized as appropriate by the Third Circuit. Given the time expended on this litigation and class counsel's representation that, if billing, it would have charged over $490,000 for its work, it does not appear that the proposed fee award would be a windfall. Neither is there any indication that a reduced fee

---

[5] It has also noted, however, that fee awards in cases with very large recoveries, *e.g.*, over $100 million, have been of lower percentages. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 736.

award would increase the actual recovery by authorized claimants. With all these factors in mind, the Court determines that the fee award proposed by class counsel is reasonable in light of the circumstances.

Considering the lodestar cross-check approved by the Third Circuit, the Court's conclusion as to the award's propriety is strengthened. Percentage of recovery fees have been approved when they represent up to four times what the lodestar recovery might represent. *See In re Prudential*, 148 F.3d at 341. In this matter, based on a partner billing rate of $550 per hour, associate billing rates of $250–$325 per hour, and paralegal and staff billing rates of $125 per hour, class counsel indicates that its fees would have been $490,997.57. Accordingly, the lodestar multiplier to reach the percentage of recovery award is less than one, thus confirming the reasonableness of the proposed fee award despite it falling somewhat on the high end of percentage fees.

Class counsel additionally seeks to recover $7310.37 in litigation costs. Counsel are typically entitled to reimbursement of reasonable and documented costs. *See Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995). Class counsel avers that it expended this amount on filing fees, service of process, postage and courier fees, transcript fees, photocopies, and legal research. These costs overall appear reasonable. Furthermore, no incentive exists for inflating litigation costs, given that class counsel's aggregated fees and costs are effectively capped under the clear sailing provision, and any increase in claimed costs would simply reduce recoverable fees. Accordingly, class counsel's application for fees and costs is granted.

### Service Award to Dominguez

Finally, Plaintiffs seek approval of a $10,000 service award to plaintiff Dominguez in recognition of his role as primary named plaintiff in this action. Service awards are sometimes granted to lead plaintiffs to reward their service to the class and the public, as well as their risks

incurred during litigation. *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002); *see also Bredbenner*, 2011 WL 1344745 at *22. "Where the payments come out of the common fund independent of attorneys' fees, the Court must carefully review the request for fairness to other class members." *Bredbenner*, 2011 WL 1344745 at *22 (internal quotation marks omitted); *see also Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005).

While it appears that the proposed service award to Dominguez would come from the common fund, rather than from the amount set aside for attorney's fees, it also appears that the common fund will not be exhausted and that the award to Dominguez thus would not reduce the recovery by any other class member. In any case, class counsel explains Dominguez's active and significant role in advancing this litigation, and the Court has seen his participation firsthand. Accordingly, the proposed service award to Dominguez appears eminently appropriate.

### III. CONCLUSION

For the reasons stated above, Plaintiffs' unopposed motion for final approval of the settlement of their class and FLSA collective claims, for an award of counsel fees and costs, for approval of a service award, and for dismissal of the action is **GRANTED**. An appropriate Order will follow.

Dated: June 9, 2017

**Hon. Leda Dunn Wettre**
**United States Magistrate Judge**

Original:     Clerk of the Court
    cc:     All Parties